**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

YUSDEL ACUNA CARMENATES,

*Petitioner*,

v. No. 1:26-cv-02339-SMD-LF

WARDEN OF THE TORRANCE
COUNTY DETENTION FACILITY, *et al*.,

*Respondents*.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Yusdel Acuna Carmenate's Petition for Writ of Habeas Corpus ("Petition"), filed on July 20, 2026. Doc. 1.

Petitioner is a native and citizen of Cuba. He was paroled into the United States on or about May 20, 2005. Petitioner was convicted and sentenced to 10 months in jail for aggravated battery in September 2011 in Broward County, Florida. *Id.* at 31. An immigration judge entered an order for his removal, which became final on November 26, 2012. U.S. Immigration and Customs Enforcement ("ICE") took him into custody on November 29, 2025. *Id.* at 9, 27, 31. Presumably, he was detained after ICE encountered him at the Turner Guilford Knight Correctional Center in Miami, Florida. *Id.* at 18. Petitioner filed a prior petition for a writ of habeas corpus in the Middle District of Florida (the "Florida Petition"). *See Acuna Carmenates v. Warden*, Case No. 2:26-cv-01909-KCD-KRH (M.D. Fla.).

The court denied the Florida Petition without prejudice, noting that ICE attempted to remove Petitioner to Mexico on January 20, 2026, but Petitioner refused to sign third-country removal forms and to dress and exit his cell. *See* Florida Petition, Doc. 9. The court found that, because Petitioner was "apparently responsible for stalling his own departure," the presumptively

reasonable period for his detention was tolled. The court, therefore, denied the petition and explained that Petitioner could file a new petition if he could demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 4-5.

Petitioner challenges his detention as prolonged and asserts that, since his transfer from Florida to the Torrance County Detention Facility in New Mexico, "removal has not yet occurred" and Respondents have not "produced evidence demonstrating that a current removal date has been scheduled" or that an "removal arrangement exists." Doc. 1 at 9. Petitioner also challenges that the representations by Respondents in the Florida Petition regarding his refusal to sign third-country removal forms, dress, or exit his cell establish that Petitioner prevented a legally authorized removal order. *Id.* at 10-11. Petitioner attaches to his Petition an ICE Notice of Removal form; the form states that ICE "intends to remove [Petitioner] to [Mexico]" and is signed by an ICE official with the date written as January 20, 2026. *Id.* at 20.

Respondents filed their Response in this action on August 11, 2026. Doc. 6. Respondents do not set forth any additional facts in their Response, make no argument as to criminal history, danger, or flight risk, and state that they are not submitting a declaration or brief in opposition to the Petition. *See id.*

## LEGAL STANDARD

An application for habeas corpus pursuant to § 2241 may be granted only if the petitioner "is in custody in violation of the Constitution, or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003); *see also Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (holding that the district court properly exercised jurisdiction over a habeas petition challenging

continued detention without a bonding hearing); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## DISCUSSION

### I. Statutory Framework: 8 U.S.C. § 1231

8 U.S.C. § 1231 governs Petitioner's custody, since his removal order became administratively final in 2012.

Under § 1231(a)(1), the government has a 90-day period in which to remove a noncitizen after a removal order becomes final. If the government is unable to effect removal within that 90-day period, continued detention becomes discretionary. *See* 8 U.S.C. § 1231(a)(6). Indefinite detention, however, is not permitted. *Zadvydas*, 533 U.S. at 689 ("In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention.").

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700. If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court established a "presumptively reasonable period of detention" of six months "for the sake of uniform administration in the federal courts." *Id.* at 701. After this six-month period, if the noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut the showing. *Id.*

Courts typically consider the cumulative time spent in detention when evaluating a habeas claim challenging detention as unreasonable per *Zadvydas*. *Vo v. Bondi*, No. 2:25-cv-02244, 2025 WL 3653722, at *3 (W.D. Wash. Dec. 17, 2025) ("The presumptively reasonable period of detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered."); *see, e.g.*, *Giorges v. Kaiser*, No. 25-cv-07683, 2025 WL 2898967, at *8 n.5 (N.D. Cal Oct. 10, 2025); *Bulle v. Wesling*, No. 26-cv-00019, 2026 WL 183840, at *4 (D.R.I. Jan. 23, 2026).

II. Respondents Failed to Comply with Due Process Regarding Third Country Removal

Respondents do not assert any facts in their Response regarding Petitioner's lack of compliance, nor do Respondents state facts setting forth their own compliance with applicable due process pertaining to third country removal.

Numerous courts across the country have found unlawful ICE's recent third country removal policy of deporting individuals without providing any opportunity to be heard and to present a fear-based claim. *See M.A. v. Baltazar*, No. 26-cv-00755-NYW, 2026 WL 809842, at *4 (D. Colo. Mar. 24, 2026) (collecting cases); *Nguyen v. Charles*, No. 1:25-cv-01592-TLN-CSK, 2025 WL 3492117, at *6 (E.D. Cal. Dec. 4, 2025) (collecting cases and finding ICE's third country removal policy contrary to Ninth Circuit precedent); *Pacheco v. Baltazar*, No. 26-cv-01176-PAB, 2026 WL 1223414, at *4 (D. Colo. May 5, 2026).

In *Pacheco*, the court explained as follows:

> Providing petitioner with notice and an opportunity to challenge removal to a third country could prevent him being removed to a third country where he might also face a credible risk of torture. The July 9, 2025 [ICE] memorandum, however, provides for the possibility that petitioner will be removed without notice. Even if ICE must receive "credible assurances" that petitioner will not be tortured, this deprives petitioner of the opportunity to argue that such assurances are, in fact, not credible. Furthermore, it is contrary to the mandate that noncitizens are entitled to notice and an opportunity to challenge their removal. Thus, many courts have

> found that ICE's third-country removal policies violate the constitutional right to due process.

*Pacheco*, 2026 WL 1223414, at *4 (first citing *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); and then citing *Esmaeili v. Noem*, No. 26-cv-00203-GPC-JLB, 2026 WL 240661, at *6 (S.D. Cal. Jan. 29, 2026)).

In its order, the *Pacheco* court also cited to *D.V.D. v. U.S. Dep't of Homeland Sec.*, where the court provided as follows:

> All removals to third countries, *i.e.*, removal to a country other than the country or countries designated during immigration proceedings as the country of removal on the non-citizen's order of removal, *see* 8 U.S.C. § 1231(b)(1)(C), must be preceded by written notice to both the non-citizen and the non-citizen's counsel in a language the non-citizen can understand. Following notice, the individual must be given a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for CAT protection prior to removal. If the non-citizen demonstrates "reasonable fear" of removal to the third country, Defendants must move to reopen the non-citizen's immigration proceedings. If the non-citizen is not found to have demonstrated a "reasonable fear" of removal to the third country, Defendants must provide a meaningful opportunity, and a minimum of fifteen days, for the non-citizen to seek reopening of their immigration proceedings.

No. CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025), *reconsideration denied sub nom. D.V.D v. U.S. Dep't of Homeland Sec.*, 786 F. Supp. 3d 223 (D. Mass. 2025) (emphasis omitted).

Here, Petitioner is a citizen of Cuba. As set forth in the Florida Petition, Respondents attempted to remove Petitioner to Mexico, a third country. The record does not reflect that Petitioner was afforded an opportunity to challenge his removal to Mexico and present a fear-based claim. As the record does not show that Respondents complied with applicable due process, any such attempts at removal to Mexico were unlawful. *See Sanchez Servellon v. Baltazar*, No. 26-cv-2908-RMR, 2026 WL 2797061, at *1 (D. Colo. Sept. 18, 2026) ("This Court and many other courts across the country 'have found that ICE's third-country removal policies violate the constitutional right to due process' when petitioners are not provided 'with notice and an

opportunity to challenge his removal before removing him to a third country.'" (citing *Pacheco*, 2026 WL 1453640, at *4)).

III. <u>Petitioner's Continued Detention Violates 8 U.S.C. § 1231 Because His Removal Is Not Reasonably Foreseeable</u>

The Court finds that, under *Zadvydas*, Petitioner has met his initial burden of proof and Respondents have failed to rebut this showing. *Zadvydas*, 533 U.S. at 701. Petitioner's detention period significantly exceeds the presumptively constitutional six-month limit. Petitioner was ordered removed in November 2012 and detained in November 2025. Since November 2025, he has been continuously detained. Thus, as of the present date, he has been detained for approximately 12 months. *See* Doc. 1.

In *Abiodun v. Musakey*, the court distinguished *Zadvydas*, noting that the *Zadvydas* petitioners faced indefinite detention because "their countries of origin would not accept them." 264 F. App'x 726, 729 (10th Cir. 2008). By contrast, the petitioner's country of origin in *Abiodun* had issued travel documents, and ICE had successfully placed the petitioner on chartered flights, leading the court to find a likelihood of removal in the foreseeable future. The present case is analogous to *Zadvydas* and distinguishable from *Abiodun*.

Here, Respondents attempted to remove Petitioner to Mexico, a third country. Respondents present no facts indicating that they complied with applicable due process by granting Petitioner the opportunity to challenge his removal to Mexico and present a fear-based claim. Indeed, Respondents present no facts at all in rebuttal and indicate that they are not submitting any declarations or briefs in opposition. *See* Doc. 6. It follows that the record does not show Respondents complied with applicable due process, in providing Petitioner notice and the reasonable opportunity to present any fear-based claim and be heard regarding a challenge to removal to Mexico.

Petitioner's prior refusal to sign third-country removal forms and dress and exit his cell on January 20, 2026, does not change the analysis. *See* 8 C.F.R. § 241.4(g)(1)(ii) ("if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal"); *Garcia v. Warden, Cent. Valley Annex*, No. 1:26-cv-04659-DJC-JDP, 2026 WL 2254380, at *3 (E.D. Cal. Aug. 4, 2026) (noting that "detention based on a Petitioner's refusal to reasonably cooperate could undermine their claim" but that the "Government cannot use indefinite detention to manufacture noncitizens' consent to removal to Mexico under the standing agreement. To adopt the Government's position on the use of detention to strong-arm third-country removals would not only undermine the consent required in those removals but also sanction the use of detention to coerce otherwise unavailable deportations"). Further, even if the Court were to credit such facts, Respondents do not set forth in their Response any rebuttal to Petitioner's showing regarding the likelihood of removal in the reasonably foreseeable future. *See* Doc. 6.

Petitioner sets forth that Respondents have detained him for approximately 12 months and failed to effectuate any lawful order of removal, and has therefore shown there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents do not indicate that they will comply with applicable due process and lawfully effectuate third country removal in a reasonably foreseeable timeframe, and therefore fail to rebut Petitioner's showing.

Courts in this circuit have reached similar conclusions. In *Salazar-Martinez v. Lyons*, another judge of this court granted the petition and ordered release, finding a violation of the Fifth Amendment due to prolonged detention and noting that "[a]llowing the Government to exhaust all potential countries would effectively result in unconstitutional indefinite detention." No. 2:25-cv-

00961-KG-KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025). In *Nfumu v. Grant*, the court granted the petition and ordered release, finding prolonged detention after a final order of removal, and noting that the "Government's decision to seek third-country removal without any evidence in the record that a petitioner has a legally meaningful connection to the relevant third countries under 8 U.S.C. § 1231(b)(2)(E)(i–iii) also weighs in Petitioner's favor." No. CIV-25-1574-J, 2026 WL 865743, at *4 (W.D. Okla. Feb. 26, 2026), *report and recommendation adopted*, No. CIV-25-1574-J, 2026 WL 637618 (W.D. Okla. Mar. 6, 2026).

And in *Barcena-Lugo v. Anda-Ybarra*, another judge of this court granted the petition and ordered release, finding the petitioner's detention had become prolonged under the *Zadvydas* framework and respondents had failed to rebut the petitioner's showing of no significant likelihood of removal. The *Barcena-Lugo* court found that "the Government has not presented sufficient evidence of Petitioner's alleged noncooperation with ICE's efforts to remove him to Mexico to foreclose his claim under § 241.4(g)(1)(ii)." The court noted that the "presiding ICE officer states that 'Petitioner's lack of cooperation creates significant obstacles to removal.' But the Government does not provide evidence that Petitioner has taken bad-faith, obstructionist steps that would restart the removal clock under § 241.4(g)(1)(ii)." The court concluded that "Petitioner failed to execute documentation related to his third-country removal—but that refusal, without more, does not defeat his claim." No. 1:26-cv-02616-KG-GJF, 2026 WL 2690250, at *2 (D.N.M. Sept. 14, 2026); *see also Garcia*, 2026 WL 2254380, at *2 ("And Petitioner's lack of compliance casts further doubt on the Respondent's ability to effectuate his third-country removal to Mexico. Indeed, district courts have repeatedly found that similarly situated petitioners — Cuban nationals whom the Government is attempting to remove to Mexico against their will — have met their

initial burden, especially because the current standing agreement with Mexico appears to be conditioned on the consent of the noncitizen.") (citation omitted).

## CONCLUSION

Accordingly, it is hereby **ORDERED**:

1) The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**;
2) Respondents **SHALL** release Petitioner no later than November 24, 2026, without any new conditions of release;
3) Respondents **SHALL** provide Petitioner with all his personal belongings and facilitate Petitioner's transportation from the detention facility and provide all necessary identity and travel documents to return to his primary address;
4) Respondents are **ENJOINED** from re-arresting or re-detaining Petitioner absent a change in circumstances showing that his removal is reasonably foreseeable, for instance, through communications from a foreign government agreeing to accept him, the procurement of travel documents, and a credible anticipated timeline for lawful removal;
5) Respondents **SHALL NOT** remove Petitioner to any third country without first providing him with constitutionally compliant procedures, including written notice in a language he can understand and the opportunity to challenge his removal and present a fear-based claim;
6) Respondents **SHALL** file a notice of compliance within two business days of Petitioner's release. This notice must specify: (1) the date, (2) the time, and (3) the manner of departure (e.g., transport to a bus station, designated drop-off location, or other arrangements). Additionally, the notice must include (4) a description or

copies of all discharge and travel documents provided to Petitioner at the time of release;

7) This Order resolves all pending motions (*see* Docs. 7, 8);

8) The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order.

**IT IS SO ORDERED**.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**